IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BABU RAMARAJ,<br><br>Defendant. | Case No. __24-cv-1282__<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against defendant Babu Ramaraj ("Ramaraj" or "Defendant") and alleges as follows:

## SUMMARY

1. This matter concerns an offering fraud conducted by Ramaraj through his company, DAB Inspection and Consulting Services, LLC ("DAB"), a civil engineering and consulting company based in Sterling, Virginia.

2. From in or about February 2019 through May 2024, Ramaraj raised approximately $31 million from over 70 investors through the fraudulent offer and sale of securities in the form of promissory notes.

3. Ramaraj promised exorbitant rates of return and told prospective investors that he would use their funds to finance surety and performance bonds required to guarantee DAB's performance of quality assurance services for government-sponsored multi-million-dollar infrastructure projects.

4. Ramaraj deceived investors by making materially false and misleading statements and omissions concerning the existence of lucrative government contracts, DAB's financial condition, and Ramaraj's intended use of investor proceeds.

5. To induce investments and disguise his misconduct, Ramaraj fabricated over 20 documents, including purported government contract awards, invoices, and DAB's financial statements.

6. In reality, DAB had not won any of the promised government contracts, and Ramaraj did not use investor proceeds for bonds as promised. Instead, Ramaraj used most of the proceeds to fund interest payments to earlier investors ("Ponzi" payments) and for his personal benefit.

7. As DAB and Ramaraj became unable to pay interest and principal on the promissory notes in the fall of 2023, Ramaraj admitted to some investors that DAB had not been awarded certain government contracts he touted and to two other investors that he had fabricated a number of contract awards, invoices, and bank statements.

## VIOLATIONS AND RELIEF SOUGHT

8. By engaging in the conduct described in this Complaint, Ramaraj violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

9. The Commission seeks to permanently enjoin Ramaraj from violating these laws again; disgorgement of ill-gotten gains derived from his unlawful activity, with prejudgment interest; civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; an order prohibiting Ramaraj

from serving as an officer or director pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and other relief the Court may deem just and appropriate.

10. Unless Ramaraj is restrained and enjoined, he will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

12. The Court has personal jurisdiction over Ramaraj. Ramaraj resides and transacts business in the Eastern District of Virginia and many of his acts and transactions constituting violations of the Securities Act and Exchange Act occurred in Loudoun County in the Eastern District of Virginia.

13. Venue in this District is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendant Ramaraj resided in Loudoun County at all times relevant to this Complaint, and DAB's principal place of business was in Loudoun County. In addition, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within Loudoun County in the Eastern District of Virginia.

14. In connection with the conduct alleged in this Complaint, Ramaraj, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means and instruments of transportation or communication in interstate commerce, or the mails, or any facility of any national securities exchange, including using the internet to email victim investors. Wire transfers were also used to transfer funds to further Ramaraj's scheme.

## DEFENDANT

15. **Babu Ramaraj**, age 47, is a resident of Aldie, Virginia. Ramaraj is the principal and 47% owner of DAB, a purported oil and gas consulting company with its principal place of business in Sterling, Virginia. From in or about June 2006 to March 2024, Ramaraj was licensed as a professional engineer in Virginia.

## RELEVANT ENTITY

16. **DAB Inspection and Consulting Services, LLC** is a Virginia limited liability with its principal place of business in Sterling, Virginia. Ramaraj originally formed DAB in 2015 to perform residential construction and inspection services. Upon information and belief, since in or around 2019, Ramaraj has used DAB as a sham quality assurance business to perpetrate the fraud described in this Complaint.

17. Ramaraj is a 47% owner of DAB, controlled the company's day-to-day operations, and exercised complete control over DAB's bank accounts and books and records. Ramaraj also had complete control over the use of investors' funds.

# FACTS

## I. DEFENDANT RAMARAJ FRAUDULENTLY INDUCED INVESTORS TO BUY PROMISSORY NOTES

### A. Overview of Ramaraj's Fraudulent Promissory Note Offering

18. From in or about February 2019 through May 2024, Ramaraj orchestrated a scheme through which he raised approximately $31 million from over 70 investors through the offer and sale of promissory notes.

19. Ramaraj solicited investors from members of his local cricket league in Northern Virginia, their friends and family members, and other acquaintances.

20. Ramaraj falsely told prospective investors that his company, DAB, had been awarded lucrative contracts to provide quality assurance services largely to state and local governments, including the Commonwealth of Virginia and the District of Columbia, and needed to raise capital to cover surety and performance bonds required for these purported contracts.

21. Ramaraj did not disclose to prospective investors his intention to use investors' funds for other purposes, such as to make repayments to other investors and pay personal expenses.

22. In exchange for providing DAB with funds for the purported bonds, Ramaraj and DAB executed promissory notes in favor of the investors. The promissory notes typically carried two or three-year terms and provided for high fixed rates of monthly interest payments with annualized returns of between approximately 40% and 60% and the principal returned at maturity.

23. Two of Ramaraj's earlier investors ("Individual A" and "Individual B") introduced Ramaraj to additional investors from their network of family, friends, and co-workers. Ramaraj offered Individual A a higher interest rate on his existing investments in exchange for introducing Ramaraj to new potential investors.

24. Ramaraj generally emailed unexecuted promissory notes to potential investors along with instructions to wire funds to one of DAB's bank accounts.

25. Once Ramaraj obtained investors' money, he generally pooled their funds in DAB's bank accounts, signed the promissory notes on behalf of himself individually and on behalf of DAB as its co-owner and managing member, and returned fully executed copies of the promissory notes to investors.

26. During meetings with prospective investors, some of which took place in online video conferences, Ramaraj claimed that: the government required surety and performance bonds for the contracts for which DAB was bidding; DAB needed outside investment because the company had exhausted its ability to fund these bonds due to the increased volume of contracts it had been awarded; and DAB intended to pool investor funds to finance the bonds. Ramaraj also touted DAB's strong financial condition, existing government contracts, and its pipeline of upcoming projects. None of Ramaraj's claims were true.

27. Upon information and belief, Ramaraj knew that DAB had not been awarded any government contracts and had no realistic prospects for obtaining any contracts. In fact, as discussed more fully below, Ramaraj admitted in or about October 2023 that he fabricated many of DAB's documents, including purported awarded government contracts, invoices from subcontractors, and DAB financial statements.

28. Ramaraj misused investors' funds to make Ponzi payments to preexisting investors, for unprofitable personal options trading, and for his daily living expenses.

### B. Ramaraj Fabricates Documents to Induce Investors to Purchase Promissory Notes from DAB

29. In addition to inducing investors by promising to pay rates of return of 40% and higher in exchange for the promissory notes, Ramaraj created the illusion that DAB was a successful and profitable business by fabricating contract awards and work orders from governmental entities, invoices from subcontractors, and by altering DAB financial records.

30. For example, Ramaraj provided prospective investors with a February 2022 Contract Award from the Federal Aviation Administration ("FAA"), purporting to show that DAB had been retained to provide construction management, quality assurance, and engineering services for regional airport design and construction in Maryland, Virginia, and the District of Columbia.

31. The purported contract reflected that DAB would receive $5,800,000 for its services and was required to post a refundable $580,000 performance bond. This contract, however, was a fake. Ramaraj later admitted that he intentionally fabricated the FAA contract.

32. Ramaraj also provided prospective investors with multiple invoices purportedly issued by a Richmond-based engineering and inspection firm ("Engineering Firm"), for work performed by its inspectors on DAB's government infrastructure contracts. Ramaraj presented the invoices, which appeared to bill DAB substantial amounts between approximately $2 and $4 million per month, as evidence of DAB's ongoing work on various large-scale infrastructure projects.

33. The Engineering Firm, as Ramaraj knew, never worked with DAB or Ramaraj. Ramaraj later admitted to intentionally fabricating invoices from the Engineering Firm.

34. During a meeting in or about September 2022, Ramaraj presented investors and prospective investors with a DAB balance sheet dated July 2022 that falsely reported $6.5 million in bond deposit payments.

35. The bond deposit payments, however, did not exist and were not legitimate assets of DAB. Listing bond deposits on the balance sheet served only to perpetuate Ramaraj's scheme to induce new investments and assuage existing investors that their money had been used as promised.

36. The DAB balance sheet also falsely reported that DAB had total bank account assets of $1,320,080. One of DAB's bank accounts listed on the balance sheet as having over $600,000 in fact had no funds since December 2020. A second bank account listed on the balance sheet as having $236,000 only had $9,200, and never had a balance over $52,000 throughout July 2022.

**C. Ramaraj Solicits Additional Investment from Existing Investors After Making Ponzi Payments**

37. Between in or about July 2019 and March 2024, Ramaraj paid existing investors approximately $19.6 million in Ponzi payments. None of these payments came from revenue from the claimed government contracts, but instead were made primarily with other investors' money. Several investors made additional investments in DAB after receiving the promised interest payments.

38. For example, in or about June 2022, an individual residing in Virginia ("Individual C") attended a pitch meeting during which Ramaraj stated that he was raising funds for government contracts awarded to DAB. After attending the meeting, Individual C decided to invest with DAB.

39. In June 2022 and September 2022, Individual C invested in two promissory notes with DAB with annualized interest rates of 42% and 60%, respectively. Ramaraj signed both promissory notes, which provided for monthly interest payments and the return of the investment principal after two years, in favor of Individual C's spouse.

40. On or about July 13, 2022, Individual C wired approximately $200,000 to a DAB bank account for the purchase of the first promissory note. On or about July 14, 2022, Ramaraj transferred $150,000 from that same DAB bank account to his personal trading account with a U.S.-based brokerage firm.

41. In or about June 2023, Individual C attended another pitch meeting during which Ramaraj told investors that DAB was expecting more than $200 million in contracts.

42. At this meeting, Ramaraj showed investors purported DAB financial statements and invoices and required investors to sign non-disclosure agreements that purported to prohibit investors from sharing information contained in those documents with any third party.

43. In or about July 2023, Individual C, who had received the interest payments pursuant to the terms of the first two promissory notes, invested in a third promissory note with DAB.

44. On or about July 28, 2023, Individual C wired $200,000 to a DAB bank account for the purchase of an additional note. That same day, Ramaraj paid an existing investor $75,000 in a required interest payment from the same DAB account.

45. Individual C did not receive any interest payments from Ramaraj after September 2023.

**D.    Ramaraj Fails to Make Interest Payments and Admits to Fabricating Documents**

46.    In or about August 2023, at an investor meeting, Ramaraj admitted that he lied, and that DAB had not won all the contracts he had previously claimed. Ramaraj promised to return investor funds within a few months.

47.    In or about October 2023, Ramaraj held another investor meeting at DAB's offices during which he told investors that DAB's business was struggling, and that DAB would be unable to pay interest going forward. Ramaraj further stated that he would return the investors' principal by January 2024.

48.    In or about October 2023, Individual A and Individual B confronted Ramaraj and he admitted that he altered and fabricated certain documents concerning DAB.

49.    On or about October 22, 2023, Ramaraj signed a document titled "Acknowledgment," in which he admitted that he "knowingly and intentionally falsified, fabricated, and tampered with various financial statements and documents of DAB Inspecting and Consulting Services, LLC from time to time."

50.    The Acknowledgement listed 23 documents that Ramaraj admitted to fabricating or altering, including certain bank statements, purported contract awards from state and federal transportation departments, work orders from an infrastructure project, and numerous invoices from the Engineering Firm.

51.    The Acknowledgment also listed five falsified DAB accounting documents, including accounts receivable, accounts payable, and profit and loss statements for the years 2021 and 2022, as well as false federal and state tax returns for DAB for the year 2022.

52. Ramaraj had shown certain of the fabricated documents listed in the Acknowledgement to prospective investors, including Individual A and Individual B, when soliciting investments in DAB through the promissory notes.

53. Ramaraj gave Individual A and Individual B a copy of the signed Acknowledgement and they, in turn, promised not to share the Acknowledgment with anyone.

### E. Ramaraj's Misuse of Investors' Funds

54. Between in or about February 2019 and February 2024, Ramaraj raised approximately $31 million from over 70 investors in Virginia, North Carolina, Ohio, New Jersey, Georgia, and Texas.

55. Contrary to his express representations to investors, Ramaraj did not use investors' funds for surety and performance bonds. In fact, those bonds did not exist. Instead, of the $31 million he raised from investors, Ramaraj used approximately $19.6 million to make Ponzi payments to existing investors and transferred over $6 million to personal brokerage accounts where he lost the majority through speculative options trading.

56. Additionally, Ramaraj also used investor funds to make various personal expenditures, including $292,000 to acquire various properties, more than $194,000 on domestic and international travel, approximately $188,000 on luxury automobiles, and more than $70,000 on jewelry.

57. Ramaraj did not return investor funds as promised and continued to solicit new investors through May 2024, even after admitting to certain earlier investors that he had lied and fabricated documents.

**II.     DEFENDANT RAMARAJ VIOLATED THE FEDERAL SECURITIES LAWS**

58.     At all relevant times, Ramaraj operated and controlled DAB and bank accounts in DAB's name.

59.     The promissory notes sold by Ramaraj were securities within the meaning of the Securities Act and the Exchange Act.  Investors provided Ramaraj with an investment of money—more than 70 investors gave Ramaraj over $31 million, and investors made their investment with a reasonable expectation of profits to be derived solely from Ramaraj's supposed ability to generate profits through his operation of DAB without any participation by any of its investors.

60.     Ramaraj pooled investors' money into bank accounts and represented that he would use those funds to obtain bonds required for DAB's lucrative government contracts.  Instead, he misappropriated investors' funds to repay existing investors and for his personal use.

61.     Ramaraj engaged in the conduct described herein, including the offer and sale of the securities in the form of promissory notes, by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.  Ramaraj offered and sold the promissory notes to investors in several states using the internet and online video conferencing platforms.

62.     Ramaraj knowingly made material untrue statements and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63.     Ramaraj also knowingly fabricated and altered documents to make DAB appear to be a profitable and successful business to deceive investors and convince them to purchase DAB promissory notes.

64.     A reasonable investor would consider the misrepresented facts and omitted information described herein—including, among other things, misrepresentations, omissions, and fabricated documents regarding the existence of DAB's lucrative contracts and the use of investors' funds—important in deciding whether to purchase the promissory notes.

65.     In connection with the conduct described herein, Ramaraj knew or was reckless in not knowing that he was making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances.

66.     Ramaraj used devices, schemes, and artifices to defraud investors, and engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon the investors.  In addition to the numerous misrepresentations discussed herein, among other things, Ramaraj fabricated documents, misled investors, and misappropriated investors' funds for his personal use and benefit.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 17(a) of the Securities Act**

67.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 66, above, as if the same were fully set forth herein.

68.     From in or about February 2019 through May 2024, as a result of the conduct alleged herein, Defendant Ramaraj, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (ii) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (iii) knowingly, recklessly, or negligently has engaged one

or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

69. By engaging in the foregoing conduct, Defendant Ramaraj, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

70. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 66, above, as if the same were fully set forth herein.

71. From in or about February 2019 through May 2024, as a result of the conduct alleged herein, Defendant Ramaraj, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has: (i) employed one or more devices, schemes, or artifices to defraud; (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

72. By engaging in the foregoing conduct, Defendant Ramaraj, directly or indirectly, singly or in concert, violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

I.

Permanently restraining and enjoining Ramaraj and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

II.

Ordering Defendant Ramaraj to disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint;

III.

Ordering Defendant Ramaraj to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

IV.

Entering an order pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] prohibiting Defendant Ramaraj from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

V.

Granting such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

DATED this 25th day of July 2024.

        Respectfully submitted,

        SECURITIES & EXCHANGE COMMISSION

        /s/ Eugene Hansen
        Eugene Hansen (VSB No. 48357)
        Securities & Exchange Commission
        100 F Street, NE
        Washington DC 20549-5977
        Telephone: 202-551-6091
        Email: hansene@sec.gov
        Fax number: 202-772-9245

        Karen M. Klotz (*Pro hac vice* to be filed)
        Judson T. Mihok (*Pro hac vice* to be filed)
        Gregory R. Bockin
        Brendan P. McGlynn
        Christine R. O'Neil
        Matthew Homberger
        Philadelphia Regional Office
        One Penn Center
        1617 JFK Boulevard, Suite 520
        Philadelphia, PA 19103
        Telephone: (215) 597-3100
        Email: KlotzK@sec.gov
        Email: MihokJ@sec.gov